# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| DWAYNE EDWARD TATE, | ) |
| Plaintiff, | ) Case No. 1:11CV00011 |
| v. | ) **OPINION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) By: James P. Jones<br>) United States District Judge |
| Defendant. | ) |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Melissa K. Curry, Assistant Regional Counsel; Alexander Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for the Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Dwayne Edward Tate filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42

U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Tate filed for benefits on July 10, 2005, alleging that he became disabled on March 15, 2004. His claim was denied initially and upon reconsideration. Tate received a hearing before an administrative law judge ("ALJ"), during which Tate, represented by counsel, and a vocational expert testified. The ALJ denied Tate's claim, and the Social Security Administration Appeals Council remanded for further development concerning the plaintiff's alleged mental impairment. A second hearing was held before the ALJ, during which Tate, represented by counsel, and a different vocational expert testified. The ALJ denied Tate's claim again, and the Social Security Administration Appeals Council denied his Request for Reconsideration. Tate then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed and argued. The case is ripe for decision.

II

Tate was born on January 11, 1966, making him a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Tate has an eleventh grade education

and has worked in the past as a painter. He originally claimed he was disabled due to breathing problems, back problems, arthritis, and tuberculosis.

In March 2004, Tate sought treatment for complaints of back and left-sided abdominal pain, as well as numbness down the left side of his body. Michael H. Stoker, M.D., opined that Tate had slightly decreased range of motion, but he did not prescribe any pain medications. Dr. Stoker referred Tate to Charles A. Harris, M.D., for an evaluation.

In March 2004, Dr. Harris stated that an abdominal CT scan revealed thickening in the sigmoid colon wall consistent with diverticulitis. Dr. Harris prescribed a two-week course of Ciprofloxacin and Flagyl.

In April 2004, Tate returned to Dr. Stoker complaining of continued left-sided pain. A cervical MRI showed some degenerative changes and a broad-based disc bulge, but no changes on his left side to explain his symptoms. A cranial CT scan was normal. Dr. Stoker denied Tate's repeated requests for pain medication during this time period.

In April 2004, Tate also saw Souha Khawam, M.D., requesting pain medication and stating that he could not return to work. Dr. Khawam noted that Tate was in no acute distress. She instructed Tate to follow up with Dr. Stoker for pain medication and a work excuse.

Tate returned to Dr. Stoker in May 2004, complaining of chest congestion and continued left-sided pain. Dr. Stoker referred Tate to a neurologist. He also indicated that Tate should avoid heavy lifting, bending, squatting, or walking for long periods. In July 2004, Dr. Stoker discovered that Tate did not keep his appointment with the neurologist. He released Tate to return to work without any restrictions.

William Humphries, M.D., a state agency physician, reviewed Tate's medical records on September 19, 2005. He diagnosed Tate with cervical spine degenerative joint and disc disease, by history, mild degenerative joint disease in the hands and feet, and chronic lumbar strain. Dr. Humphries opined that Tate was capable of performing a range of light work.

On October 4, 2005, Shrish Shahane, M.D., a state agency physician, reviewed Tate's medical records. He determined that Tate could perform a range of light work. State agency physicians Frank Johnson, M.D., and Richard Surrusco, M.D., also reviewed the medical records and found that Tate could perform a range of light work.

In January 2006, E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed Tate's medical records and determined that he did not have a medically determinable mental impairment. Dr. Tenison noted that Tate's mental allegations were not credible.

Tate sought treatment at Mount Rogers Community Counseling Services in February 2006. He complained of anxiety, panic attacks, and depression. Jim Blair, MS/SAC, diagnosed Tate with generalized anxiety disorder and major depressive disorder. He assigned a GAF score of 55. Mr. Blair recommended that Tate undergo counseling.

In April 2006, Tate was seen by Pamela S. Tessnear, Ph.D., for a psychological evaluation. Tate complained of depression, anxiety, and panic attacks. He also reported pain in his joints, back, arms, and shoulder, numbness on the left side of his body, difficulty breathing, and problems with his vision. Tate stated that he could not do any work because of his pain. Dr. Tessnear assigned Tate a GAF score of 52 and diagnosed him with moderate depression, panic disorder, and generalized anxiety disorder. Dr. Tessnear concluded that Tate would have problems understanding detailed or complex instructions, but would be able to accept supervision, get along with co-workers, and carry out simple job instructions.

Maria C. Abeleda, M.D., evaluated Tate in January 2007. Dr. Abeleda diagnosed Tate with recurrent major depression, generalized anxiety disorder, panic attacks without agoraphobia, and insomnia. She prescribed Cymbalta and instructed Tate to continue with counseling.

-5-

Case 1:11-cv-00011-JPJ-PMS   Document 19   Filed 10/27/11   Page 5 of 13   Pageid#: 570

In February 2007, Tate returned to Dr. Abeleda. She reported less depression and anxiety, improved sleep, and no panic attacks. Dr. Abeleda advised Tate to continue taking Cymbalta.

In April 2007, Tate's counselor, Jim Blair, noted that Tate was maintaining a fair level of stability, with occasional mood swings, worrying, and discomfort when out in public. Mr. Blair stated that Tate was making moderate progress.

In September 2008, Tate sought treatment at the Brock Hughes Free Clinic. He complained of constipation, abdominal pain, and acute sinusitis/bronchitis. Randal Beavers, M.D., indicated that Tate was unable to lift more than 15 pounds or to sit or stand more than one hour at a time.

In October 2008, Dr. Beavers opined that Tate was much improved with less pain, depression, and anxiety after re-starting Cymbalta.

At the administrative hearing held in November 2008, Tate testified on his own behalf. Tate confirmed that he has not returned to his mental health counselor since April 2007. John F. Newman, a vocational expert, also testified. He classified Tate's past work as medium to very heavy, semi-skilled.

After reviewing Tate's records and taking into consideration the testimony at the hearing, the ALJ determined that he had severe impairments of degenerative disc disease, osteoarthritis, depression, and anxiety, but that none of these

conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Tate's limitations, the ALJ determined that Tate retained the residual functional capacity to perform a limited range of light, unskilled work that involved occasional stooping, kneeling, crouching, and crawling but did not involve climbing ladders, working at heights, or operating dangerous machinery. He was limited to jobs only requiring the ability to understand, remember, and carry out simple instructions. The ALJ noted that Tate needs a low stress job in a stable and predictable work environment with minimal interaction with the public. The vocational expert testified that someone with Tate's residual functional capacity could work as an assembler, a packer, or an inspector. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Tate was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Tate argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate Tate's mental impairments, substituted his own medical opinion for the opinions of highly qualified mental health professionals, and failed to analyze the cumulative effects of all Tate's impairments. For the reasons below, I disagree.

# III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*.; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Tate argues that the ALJ's decision is not supported by substantial evidence. He presents three arguments.

First, Tate argues that the ALJ failed to consider the significance of his nonexertional impairments. Specifically, Tate asserts that the medical records from Mount Rogers Community Services Board and Dr. Tessnear indicate that he suffers from severe emotional problems that would preclude him from dealing with work stresses.

There is nothing in the record to indicate that the ALJ ignored or improperly discounted Tate's nonexertional impairments. The ALJ accounted for Tate's mental impairments in his residual functional capacity assessment, effectively limiting him to unskilled work. Although the ALJ did not list every detail about Tate's treatment from Mount Rogers Community Service Board and Dr. Tessnear, he did discuss the evaluations conducted by these providers. The ALJ is not required to recite the entire medical record in detail. Tate had an opportunity at both of the administrative hearings to develop the record as it relates to his allegations of disabling mental or emotional impairments. Tate's counsel questioned him regarding his complaints at the hearings, and the ALJ properly considered this testimony as well as all of the objective medical evidence in making his decision.

Second, Tate argues that the ALJ improperly substituted his own medical opinions for the opinions of highly qualified mental health professionals. Particularly, Tate asserts that the ALJ improperly rejected the opinions of Dr. Tessnear and Dr. Beavers. Dr. Tessnear opined that Tate had only a "fair" ability to deal with some mental situations. Dr. Beavers completed a Virginia Department of Social Services form indicating that Tate was unable to work for an unspecified amount of time primarily because of depression.

-10-

Case 1:11-cv-00011-JPJ-PMS   Document 19   Filed 10/27/11   Page 10 of 13   Pageid#: 575

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In the present case, the ALJ considered the opinions of Dr. Tessnear and Dr. Beavers but gave little weight to their assessments, for several reasons. First, Dr. Tessnear was not a treating physician and thus her opinions are not afforded controlling weight. 20 C.F.R. 404.1527(d). Second, the opinions of Dr. Tessnear and Dr. Beavers are inconsistent with the objective medical evidence of record. Tate specifically told Dr. Tessnear that he had no problems at his last job, got along with others, and had "plenty of friends." Moreover, Dr. Tessnear indicated that Tate displayed "possible symptom exaggeration." Tate's treatment notes from Dr. Beavers also show that he was making moderate progress in his counseling sessions and that his depression and anxiety significantly improved when he took Cymbalta.

Additionally, Tate argues that the ALJ relied solely on his activities of daily living to reject the opinions of Dr. Tessnear and Dr. Beavers. The ALJ is required under the regulations to consider a claimant's activities of daily living in

-11-

evaluating the credibility of his allegations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Fourth Circuit has recognized that daily activities are a highly probative factor in weighing the credibility of a claimant's allegations. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). Nevertheless, the ALJ's thorough assessment of the objective medical evidence makes clear that he did not rely solely on Tate's daily activities to discount the opinions of Dr. Tessnear and Dr. Beavers.

Finally, Tate claims that the ALJ failed to consider all of his impairments in combination. This argument has no merit. The ALJ incorporated both exertional and nonexertional impairments in Tate's residual functional capacity assessment. A hypothetical question posed to the vocational expert outlined all of these limitations, and the plaintiff has failed to suggest any additional restrictions that the ALJ should have imposed. Although Tate's cumulative impairments limited his employment capabilities, especially in regard to the semi-skilled work that he formerly performed as a painter, substantial evidence shows that his impairments did not prevent him from performing a range of light work.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: October 27, 2011

/s/  James P. Jones
United States District Judge